PETER P. NGHIEM
448 Coelho Ct.
Milpitas, CA 95035
Phone: (669) 212-0983
pnghiem8@gmail.com

Pro Se Plaintiff

**FILED**

SEP 03 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

PETER P. NGHIEM

        Plaintiff,

vs.

SANTA CLARA UNIVERSITY, NAM LING, GRACE LING, JEREMY KEMP, AND DOES ONE THROUGH TEN

        Defendants.

C 21 06872 NC

Case Number: _____

COMPLAINT AND DEMAND FOR JURY TRIAL

Complaint filed September 3, 2021

## NATURE OF THE CASE

1. This is an employment discrimination case, brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., as amended ("Title VII"); Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, et seq. ("Section 1981"); the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§621 to 634 ("ADEA"); the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§12112 to 12117 ("ADA"); the California Fair Employment and Housing Act, Government Code §§12940, et seq. ("FEHA"); and 42 U.S. Code § 1985(2-3), Conspiracy to Interfere with Civil Rights. Plaintiff alleges that defendants Santa Clara University ("SCU"), Nam Ling, Grace Ling, and Jeremy Kemp have engaged in, and continue to engage in, a pattern and practice of employment discrimination and retaliation with defamation and conspiracy to commit civil wrong and tort against him, both intentional and premeditated, because of his race, national origin, age, and disability. Defendants' discriminatory and retaliatory practices include, but are not limited to, demeaning and disparate treatment, humiliation, defamation, and

1  discrimination in recruitment, hiring, promotion, and job assignment as alleged in this Complaint.

2  Plaintiff seeks declaratory, injunctive, and equitable monetary relief from these practices;

3  compensatory and punitive damages; equitable remedies of accounting and restitution; and an award

4  of costs, expenses, and attorney's fees.

5  JURISDICTION AND VENUE

6      2. This Court has original subject matter jurisdiction of plaintiff's Title VII, Section 1981,

7  ADEA, ADA, and 42 U.S.C. §1985(2-3) claims pursuant to 28 U.S.C. §§1331 and 1343(a)(4).

8      3. This Court also has original jurisdiction over the ADEA and Title VII claims pursuant to

9
10  Section 7(c) of the ADEA, 29 U.S.C. §626(c), and 42 U.S.C. §2000e-5(f)(3), respectively.

11      4. This Court has supplemental jurisdiction over all other claims including plaintiff's

12  defamation and FEHA claims pursuant to 28 U.S.C. §1367 because they arise from a common nucleus

13  of operative facts with the federal claims and are so related to the federal claims as to form part of the

14  same case or controversy under Article III of the United States Constitution.

15      5. The United States District Court for the Northern District of California has personal

16  jurisdiction over defendants because they do business in California and in this District, and because the

17  discriminatory acts complained of and giving rise to the claims alleged occurred in and emanated from

18  this District. Plaintiff was also employed by defendant SCU in this District.

19
20      6. Venue is proper in the San Jose Division of this District pursuant to 28 U.S.C. §1391(b),(c)

21  and 42 U.S.C. §2000-5(f)(3) because the events giving rise to the claims occurred in this District.

22  Plaintiff has exhausted his administrative remedies and complied with all statutory prerequisites to his

23  Title VII, Section 1981, ADEA, ADA, FEHA, and defamation claims. Plaintiff filed a charge of

24  discrimination based on race, national origin, retaliation, age, and disability with the United States

25  Equal Employment Opportunity Commission ("EEOC") on or about May 19, 2021 (Exhibit 1.A). On

26  June 8, 2021, the EEOC issued plaintiff a notice of Right to Sue on that Charge (Exhibit 1.B). Sixty

27  days have passed since the filing of the EEOC charge. 29 U.S.C. § 626(d)(1).

28

7. Pursuant to the EEOC's work-sharing agreement with the California Department of Fair Employment and Housing ("DFEH"), plaintiff's charge is considered dually filed with the DFEH. By notice dated May 19, 2021, the DFEH dismissed plaintiff's case and issued a Notice of Right to Sue.

8. All other prerequisites to the filing of this suit have been met.

PARTIES

9.      Plaintiff Peter P. Nghiem is a US citizen of Vietnamese national origin and a resident of Milpitas, California, within this District. He holds three graduate degrees from SCU, an MS in Engineering Management, and another MS and a PhD in Computer Science and Engineering. He also has a BS with honor in Electrical and Electronic Engineering from California State University, Sacramento, and a patent granted by USPTO on May 5, 2020, for his "Best Trade-off Point (BToP) method for optimal resource provisioning and performance efficiency" (US PN/10642652) invented at SCU. Plaintiff had numerous years of work experience in the high-tech industry when he started applying for a tenure-track Assistant Professor position in the Computer Science and Engineering ("COEN") department of SCU Engineering School in 2017. He continued to apply for similar full-time and tenure-track Assistant Professor openings every subsequent year, but SCU only offered him a part-time Adjunct Faculty position, as a Quarterly Adjunct Lecturer ("QAL") from September 2018. Since 2017, SCU has repeatedly refused to promote or hire him into a full-time or tenure-track position because of his race, national origin, age, and disability while subjecting him to demeaning and disparate treatment, humiliation, retaliation, and defamation before fabricating pretextual reasons to artfully cancel and remove all his part-time teaching assignments as QAL in 2020 and 2021.

10. Defendant Santa Clara University is a private university and California's oldest operating institution of higher learning. Founded in 1851, SCU ranks as the fifth best colleges and universities affiliated as Roman Catholic in the US in 2021. It was placed in the top 15 percent (No. 54) among nearly 400 national-level universities by U.S. News & World Report in the publication's 2020 "Best Colleges" edition. In 2019, SCU was ranked as No. 1 in the West in the Regional Universities category before been elevated to national university standing. In Fall 2019, SCU employed 564 full-time faculty and 347 part-time faculty in Santa Clara, the heart of Silicon Valley. The university had

an annual operating budget of $516,500,000 for Fiscal Year 2020 and an endowment value of $1,019,760,000 in June 2019. The online "About" information of SCU School of Engineering starts with the following declaration: "Guided by our Jesuit, Catholic values, we are committed to the highest in academic and ethical achievement."

11. Defendant Nam Ling is Chair of Computer Science and Engineering (COEN) department. Nam Ling, who is Chinese and roughly in his early sixties, has manifested animosity against plaintiff's protected classes and even discriminatorily and explicitly told plaintiff straight that he was too old for the tenure track positions and that he should apply to teach Computer Architecture elsewhere at local community colleges in Fall 2019. The school records show that the newly hired full-time and/or tenure-track faculty under Chair Nam Ling from about 2012 were predominantly Chinese and none was Vietnamese. The ages of the newly hired tenure-track faculty were roughly in the mid or high thirties at the time of being hired.

12. Defendant Grace Ling is the daughter of Chair Nam Ling and a graduate student in COEN. She enrolled in plaintiff's class COEN 210, Computer Architecture, but did not study like any other students. With a hidden agenda, she failed the exams and then blamed her poor performance on plaintiff, her instructor, by publishing false and malicious statements to assassinate his personal character and professional competency in SCU's student evaluation form (Exhibit 3, ¶¶9-18 ("Declaration of Peter P. Nghiem as a Rebuttal to Grace Ling's Vicious Calumny")) as well as online at www.ratemyprofessors.com/ShowRatings.jsp?tid=2545607 (§78 herein). Significantly, Grace Ling conspired with her father, Chair Nam Ling, to remove plaintiff from any faculty position at SCU and to ruin his career with her defamatory insinuations, calumny, and slandering complaint against him to the acting Chair Silvia Figueira and many other SCU faculty and staff.

13. Defendant Jeremy Kemp is the SCU Online/Hybrid Learning Specialist who subjected plaintiff to demeaning and disparate treatment and humiliation during a multimedia video workshop for faculty on August 23, 2019, shortly before Fall 2019. After Brian Larkin, SCU Instructional Technology Manager, and plaintiff had reported that discriminatory incident to SCU's Title IX office, Jeremy Kemp revealed to plaintiff his close connection to Nam Ling's wife, Mei Yan Lu, as his "good friend and mentor from SJSU in Educational leadership" to show his close connection and influence

1  on the Chair of COEN department (Exhibit 2). Jeremy Kemp indicated that he would show Chair Nam

2  Ling the short video sample produced by plaintiff for his Best Trade-off Point (BToP) method

3  researched and invented at SCU which was patent pending at the time

4  (https://drive.google.com/file/d/1rdNGQHNrlUShuMs9MTrPNYxfADsd32v0/view). Shortly

5  thereafter, Nam Ling discriminatorily told plaintiff in Fall 2019 that he was too old for the Assistant

6  Professor position, and he should apply to teach Computer Architecture elsewhere in local community

7  colleges. Suddenly, Grace Ling made defamatory insinuations and calumny against plaintiff in the end

8  of Fall 2019 as a pretext for her father Nam Ling to discriminatorily removed plaintiff from any

9  teaching assignment at SCU ostensibly due to low student enrollment. The sequence of events infers a

10  meeting of the minds in the conspiracy where Jeremy Kemp was a coconspirator who had implied

11  through his denigrating comments and gesture in the workshop for faculty that plaintiff was not

12  qualified to teach Computer Architecture and should be ousted from his faculty position at SCU.

### FACTS RELATING TO THE PATTERN OF INTENTIONAL DISCRIMINATION AND RETALIATION WITH DEFAMATION AND CONSPIRACY TO COMMIT CIVIL WRONG AND TORT BY DEFENDANTS

14. Defendants' employment practices and disparate treatment with defamation and conspiracy to commit civil wrong and tort at SCU discriminate against plaintiff because of his race, national origin, age, and disability. The discriminatory practices engaged in by defendants are intentional and systemic in nature. They adversely affect plaintiff with respect to opportunities for hiring, promotion, job assignment, compensation, and other terms, conditions, and privileges of employment, as specifically summarized in this complaint.

15. Plaintiff Peter P. Nghiem, with a PhD and an MS in Computer Science and Engineering, another MS in Engineering Management, and a BS with honor in Electrical and Electronic Engineering as well as numerous years of industry experience, has been applying for a tenure-track Assistant Professor position in the COEN department of SCU Engineering School since July of 2017. Although he was qualified for the position in all respects, especially with a patent granted by USPTO for his "BToP method" (US PN/10642652) researched and invented at SCU, he was told he had not been selected for the position because he was too old for it. On information and belief, SCU COEN

1  department hired substantially many younger individuals who were not more qualified than plaintiff to

2  fill the tenure-track Assistant Professor position from 2012 to 2021.

3       16. In or about February of 2018, plaintiff had a stroke but recovered from it. Plaintiff verbally

4  notified his PhD advisor Silvia Figueira of his health set back upon his recovery after several months

5  of rehabilitation with physical therapy to overcome his disability (Exhibit 3, ¶4).

6       17. In or about August of 2018, SCU employed plaintiff as a Quarterly Adjunct Lecturer

7  (QAL), a part-time adjunct faculty position, to teach COEN 210, Computer Architecture, a graduate

8  level course in the COEN department of SCU Engineering School, starting in Fall 2018. Plaintiff

9  satisfactorily taught COEN 210 and was told by Weijia Shang that he would be assigned to teach the

10  course again regularly. However, his job assignment to teach COEN 210 was canceled twice in Spring

11  2020 and Fall 2020 after he had taught two more sessions of COEN 210 in Fall 2019. He has not

12  received any job assignment ever since because SCU uses Grace Ling' defamatory insinuations and

13  calumny against him as a pretext for discrimination.

14       18. In or about December of 2018, Plaintiff was appointed by lead professor Weijia Shang to

15  teach COEN 279, Design and Analysis of Algorithms, a graduate level course in the COEN

16  department of SCU Engineering School, starting in Winter 2019. However, Chair Nam Ling canceled

17  plaintiff's appointment and reassigned the course COEN 279 to Yuan Wang, an Academic Year

18  Adjunct Lecturer (AYAL). As such, plaintiff ended up having no class to teach in Winter 2019.

19       19. In or about February of 2019, Plaintiff was appointed by lead professor Silvia Figueira to

20  teach COEN 389, Energy-Efficient Computing, a graduate level course in the COEN department of

21  SCU Engineering School, starting in Spring 2019. Plaintiff satisfactorily taught COEN 389 and was

22  recognized by Silvia Figueira as doing a good job and therefore, would be assigned to teach the course

23  again regularly. However, his job assignment to teach COEN 389 was canceled last minute in Spring

24  2020. He has not received any job assignment ever since because SCU uses Grace Ling' defamatory

25  insinuations and calumny to discriminatorily cancel all his teaching assignments ostensibly due to low

26  student enrollment.

27       20. In or about the end of 2018, plaintiff was diagnosed with prostate cancer but survived with

28  some long-term impairments after a major surgery in the end of Spring 2019. Plaintiff verbally notified

both lead professors Silvia Figueira and Weijia Shang of his second health set back upon his recovery a couple months later. Upon information and belief, Chair Nam Ling must have known about plaintiff's medical condition and disability from the lead professors even when he was on sabbatical leave in Fall 2019 but still regularly coming to the office while Silvia Figueira was acting in his capacity (Exhibit 3, ¶4). SCU COEN department violates the ADA in discriminating against plaintiff based on his medical condition regarding employment decisions which include hiring, firing, promoting, demoting, training, and job assignments since that is illegal under both federal and state laws.

21. According to SCU online information about the faculty and staff of COEN department in 2021, seven out of twelve newly hired full-time and/or tenure track faculty from about 2012 to 2021 were Chinese and none was Vietnamese. The racial and national origin composition of SCU COEN full-time faculty is predominantly Chinese and then white, and none of the full-time faculty is Vietnamese. SCU COEN department under Chair Nam Ling maintains hiring policies and practices for giving preference to Chinese employees that result in the disproportionate employment of Chinese applicants. Such bias in the recruitment system and repeated refusal to consider plaintiff for the tenure-track Assistant Professor despite his qualifications indicate that SCU COEN department discriminates against plaintiff because of his race and national origin in its job hiring, promotion, and job assignment practices.

22. Under Chair Nam Ling, SCU COEN department generally does not hire older individuals for its entry-level Assistant Professor and other tenure-track faculty positions. The ages of the newly hired tenure-track Assistant Professor to SCU COEN department were roughly in the mid or high thirties at the time of being hired and none was in the high fifties or low sixties. Plaintiff was fifty-eight years old when he first started applying for the Assistant Professor position in 2017. SCU employed plaintiff as a QAL part-time adjunct faculty in Fall 2018 when he was sixty years old. Since then, SCU has never promoted or hired him into a full-time AYAL adjunct faculty or a tenure-track Assistant Professor despite his proven good graduate teaching records at SCU and his solid qualifications.

23. Defendants discriminate against plaintiff because of his age in violation of the ADEA which prohibits employment discrimination against persons 40 years of age or older. According to the amendments to the ADEA, in 1982 the minimum allowable mandatory retirement age was increased to age 75 from 65. In 1986 Congress made additional amendments to the ADEA, prohibiting any mandatory retirement ages for most workers in the United States. SCU COEN department under Chair Nam Ling maintains hiring policies and practices for giving preference to younger employees that result in the disproportionate employment of younger applicants. SCU COEN department violates the ADEA for intentionally denying plaintiff employment opportunities in its job hiring, promotion, and job assignment practices because of his age.

24. Defendants conspire to discriminatorily harass, humiliate, defame, and subject plaintiff to disparate treatment while making false and malicious accusations based on fictitious and fabricated incidents as pretextual reasons to quietly remove him from any teaching assignments at SCU to cover up their discriminatory and retaliatory practices in failing to hire or promote plaintiff to a full-time Academic Year Adjunct Lecturer (AYAL) or tenure-track Assistant Professor position.

25. On or about August 23, 2019, plaintiff was subjected to a demeaning and disparate treatment by Jeremy Kemp, SCU Online/Hybrid Learning Specialist, during a multimedia video workshop for faculty before Fall 2019. On or about August 28, 2019, Brian Larkin, SCU Instructional Technology Manager, who witnessed the discriminatory incident, reported it to Belinda Guthrie, Director of EEO & Title IX at SCU. Shortly thereafter, plaintiff came forward with his own report of being discriminatorily harassed by Jeremy Kemp. "… [T]here was a pattern of innuendoes and hidden agenda for humiliation and discredit against [plaintiff] even after [plaintiff] had politely made a specific request to Mr. Kemp to stop patronizing [plaintiff] the day before this repeated incident [on August 23, 2019]." "[Jerry Kemp] has made many other disrespectful and suggestive belittling remarks on [plaintiff's] qualification to teach Computer Architecture." "The uncalled-for dismissive attitude, demeaning behavior, and belittling comment of Jeremy Kemp against [plaintiff], an American faculty of Vietnamese heritage, are insulting and humiliating, and therefore, should not be condoned at SCU" (Exhibit 2). In this discriminatory incident based on plaintiff's protected classes, Jeremy Kemp tried to suppress plaintiff's presentation of his short video production sample to make him look bad in front of

1  his peers while implying with his denigrating comment and gesture that plaintiff was not qualified to

2  teach Computer Architecture and should be ousted from his faculty position at SCU.

3      26. On or about September 6, 2019, reacting to plaintiff's report of his discriminatory treatment

4  of plaintiff to SCU Title IX office, Jeremy Kemp emailed plaintiff to pretend that he wanted to show

5  case the video sample produced by plaintiff for his Best Trade-off Point (BToP) method

6  (https://drive.google.com/file/d/1rdNGQHNrlUShuMs9MTrPNYxfADsd32v0/view) to Christopher

7  Kitts, SCU Dean of Research and Faculty Development, and Nam Ling, Chair of COEN department.

8  In this email, Jeremy Kemp revealed that Nam Ling's wife, Mei Yan Lu, was his "good friend and

9  mentor from SJSU in Educational leadership" to show his close connection and influence on the Chair

10  of COEN department (Exhibit 3.14). Thereafter, Nam Ling told plaintiff in Fall 2019 that he was too

11  old for the Assistant Professor position, and he should apply to teach Computer Architecture

12  elsewhere. Subsequently, Grace Ling published defamatory insinuations and calumny against plaintiff

13  in the end of Fall 2019 to provide a pretext for the discriminatory removal of plaintiff from his QAL

14  adjunct faculty position. The overt acts in furtherance of defendants' agreement to achieve their same

15  offensive goal to remove plaintiff from any faculty position at SCU were manifested in the sequence of

16  events and the conspirators' discriminatory and retaliatory actions.

17      27. In Fall 2019, plaintiff taught two sessions of COEN 210, Computer Architecture, as

18  assigned by lead professor Weijia Shang. The first session 92095 was on Monday and Wednesday

19  evening from 7:10 pm to 9:00 pm and the second session 92094 was on Tuesday and Thursday

20  morning from 7:10 am to 9:00 am (Exhibit 3, ¶¶1-2). On or about September 23, 2019, the first day of

21  plaintiff's COEN210-92095 class lecture, Grace Ling who was a student enrolled in this class session,

22  came to introduce herself to plaintiff as the daughter of Nam Ling, Chair of COEN Department, to

23  request some special treatments (Exhibit 3, ¶5). Grace Ling later failed the course COEN 210 because

24  she did not study like any other students, paid no attention to class lectures, and showed no effort to

25  learn the course materials while appearing to have a hidden agenda which turned out to be a calumny

26  against plaintiff to have him removed from any teaching position at SCU as part of a conspiracy to

27  interfere with plaintiff's civil rights. (Exhibit 3, ¶6).

28

28. In or about the beginning of December of 2019 in a meeting in his office, Chair Nam Ling discriminatorily told plaintiff straight that "[plaintiff] had not been considered for the [tenure track Assistant Professor] openings because of [his] old age and that the department was looking for younger PhD graduates who focused more in doing research[] even though they could not teach well." He further added that "[plaintiff] should apply to teach Computer Architecture in the community colleges such as De Anza college and West Valley-Mission college" (Exhibit 3, ¶3).

29. On or about December 16, 2019, after COEN 210 final exam, plaintiff went over every problem in Grace Ling's final exam paper with lead professor Weijia Shang to address her severe poor performance in the class (Exhibit 3, ¶7). On or about December 17, 2019, plaintiff consulted with acting Chair, Silvia Figueira, about Grace Ling's failure to study COEN 210 to deserve a passing grade and was told to discuss the situation Chair Nam Ling (Exhibit 3, ¶7).

30. Later in the same day, on or about December 17, 2019, plaintiff had a meeting with Chair Nam Ling who indicated that his daughter Grace Ling should receive a B grade or above in COEN 210 regardless of her poor performance and the academic integrity. After that meeting, to adhere to SCU academic integrity, Plaintiff submitted his grading to the registrar office giving Grace Ling a C+ passing Grade (Exhibit 3, ¶8).

31. In or about the evening of December 18, 2019, Plaintiff received students' course evaluation for Fall 2019 and was shocked to find out that defendant Grace Ling had made numerous false and malicious comments to defame plaintiff unbeknownst to him while he had been trying to help her pass the course. To assassinate plaintiff's character and reputation, she falsely and maliciously alleged that "Peter Nghiem has been the most unprofessional and condescending professor that I've ever had in my 4+ years at SCU. Not only his lectures are disorganized, but he also singled me out for harassment. Nghiem creates a learning environment is hostile and discouraging. ... The exams look nothing like lecture material and homework. .... His behavior is threatening because he was following and stalking me. ... A few days later after class, I was talking to my friend outside. Nghiem randomly comes up and interrupts our conversation to say "Grace, are you ready for the final? You got one of the lowest scores in the class on the midterm. You better start studying now" in front of everyone, violating my privacy. ... I was singled out and harassed. ... I sincerely hope that my teaching

evaluation gets read and action gets taken. I do not want other students at SCU to have to go through anything like what I went through. He is a danger to students" (¶77 herein; Exhibit 3, ¶¶9-18). Grace Ling's defamatory statement against plaintiff as a stalker among many other false and malicious accusations of harassment was extremely vicious since plaintiff could not possibly be such a person with his good reputation and his recent disability as a prostate cancer survivor who was struggling with many impairments after a recent major surgery in the end of Spring 2019, just a few months before Fall 2019.

32. As clarified in plaintiff's rebuttal to Grace Ling's calumny (Exhibit 3, ¶9), Grace Ling "fabricated many fictitious incidents, distorted several facts, and made[-]up stories to viciously frame [plaintiff] with some sort [of] unprofessional and criminal misconducts. It was so egregious that in the light of preponderant evidence in the records against her libel and slander, one could easily conclude that her vicious calumny was well-calculated and premeditated to cause as much harm, injury, and severe damages as possible. No one could imagine such an evil and wicked act of defamation which demonstrates so much hatred and destructive ill-will, could happen in our Jesuit educational institution." Acting Chair Silvia Figueira confirmed that Grace Ling came to her office to make the complaint in person. Leading professor Weijia Shang indicated that she also knew about Grace Ling's complaint. Chair Nam Ling was apparently the mastermind behind the plot to use his daughter's defamatory insinuations and calumny (Exhibit 3, ¶¶9-18) to remove plaintiff from any faculty position at SCU. The sequence of events and discriminatory incidents also point to a conspiracy between defendants to commit civil wrong and tort to ruin plaintiff's good name and career and an attempt to cover up discrimination and retaliation. Defendants further attempted to justify several past unresolved injustices that plaintiff has had to endure by assassinating his character and reputation to mar his credibility.

33. On or about December 20, 2020, acting Chair Silvia Figueira downplayed Grace Ling's false and malicious comments by stating that "Nobody sees these evaluations but you and the chair of the department. So, this will remain in our dept, and our job when we look at the evaluations is to check for patterns. One out-of-the-norm situation will be considered an outlier. So, you don't need to do anything about this." (Exhibit 3.16). However, the problem is that Grace Ling "has deliberately

1   asserted numerous false and malicious allegations into [plaintiff's] teaching record to deliberately

2   fabricate a pattern of fictitious misconduct to cover up past as well as present torts and injustice against

3   [plaintiff]." Defendants have made many attempts to frame plaintiff with some sort of misconduct and

4   job incompetence as pretext for their discriminatory and retaliatory motive.

5       34. On or about January 7, 2020, Plaintiff emailed his written "Declaration of Peter P. Nghiem

6   as a Rebuttal to Grace Ling's Vicious Calumny" (Exhibit 3, ¶¶1-18) to Elaine Scott, Dean of SCU

7   Engineering School, Silvia Figueira, and Weijia Shang to request "an immediate thorough

8   investigation and disciplinary action to be taken to prevent and deter the appalling, unethical, and

9   destructive misconduct from happening again at SCU." On January 9, 2020, Plaintiff forwarded that

10  email to Belinda Guthrie, Director of EEO & Title IX at SCU, to seek an investigation from her office

11  since he was concerned that this new incident of libel and slander could be part of a conspiracy to

12  commit civil wrong and tort, discrimination, and retaliation, like the previous discriminatory incidents

13  he had reported.

14      35. On May 7, 2020 and June 4, 2020, the SCU's Engineering News from Heidi Williams,

15  Director of Communication, mentioned about plaintiff's new patent granted by USPTO on May 5,

16  2020, for his Best Trade-off Point (BToP) method for optimal resource provisioning and performance

17  efficiency" (US PN/10642652) under the Alumni News section instead of the Faculty News section. The

18  announcement in Heidi Williams' Buzz News 5-7-20 email was forwarded to plaintiff by Tokunbo

19  Ogunfunmi and Godfrey Mungal, former Dean of SCU Engineering School, since plaintiff was not

20  included in Heidi Williams' Buzz News distribution list (Exhibit 5.A-B not attached herewith).

21      36. In or about Spring 2020, both Plaintiff's COEN 210 and COEN 389 sessions were canceled

22  last minute by COEN department due to low student enrollment as shown in the email notice from Lisa

23  Jocewicz, Director of Records and Operations of SCU Graduate Engineering, dated March 9, 2020

24  (Exhibit 4.A not attached herewith). In or about Fall 2020, Plaintiff's COEN 210 session was again

25  cancelled last minute due to low student enrollment by COEN department while the other two sessions

26  taught by Weijia Shang and Ahmed Ezzat, who was a QAL faculty like plaintiff, were not canceled as

27  shown in the email notice from Pam Lin, COEN Senior Administrative Assistant, dated August 3,

28  2020 (Exhibit 4.B not attached herewith). Apparently, the low student enrollment in all plaintiff's class

1    sessions was a direct result of defendants' pretext for discrimination where Grace Ling's false and

2    malicious negative reviews effectively scared prospective students from signing up for plaintiff's class.

3    Subsequently, plaintiff's name and contact information as Adjunct Lecturer in COEN department

4    previously listed in the faculty and staff directory and phonebook on SCU web site were removed.

5    Thereafter, plaintiff was not assigned any teaching sessions for the whole 2021 and the next year.

6    Plaintiff is aware that at least five other faculty outside of his protected classes were assigned courses

7    that should have been assigned to him (Exhibit 1.A). Defendant SCU did not even pay plaintiff the

8    stipend for completing its Creating Optimal Online Learning (COOL) program and additional Media

9    Services workshops in 2020 as offered.

10        37. On or about September 24, 2020, by coincidence in trying to figure out the reason why all

11   his class sessions had been repeatedly canceled last minute due to low student enrollment in Spring

12   2010 and Fall 2020, plaintiff discovered that Grace Ling had posted a similar defamatory comment

13   against him online at www.ratemyprofessors.com/ShowRatings.jsp?tid=2545607 since December 2,

14   2019 (¶78 herein). Plaintiff immediately notified Belinda Guthrie, Director of EEO & Title IX at SCU,

15   by email of his newly discovered evidence of defamation and carbon copied Lisa Kloppenberg, SCU

16   Provost, and Margaret Russell, Interim Associate Provost for Diversity and Inclusion, since he had not

17   heard back from Belinda Guthrie after his previous request for an investigation on January 9, 2020. On

18   September 25, 2020, Belinda Guthrie responded stating that "[plaintiff's] complaint did not fall under

19   the purview of the University's Policy on Unlawful Harassment and Discrimination" while failing to

20   address Grace Ling's egregious calumny as a pretext for her father Chair Nam Ling to remove plaintiff

21   from any teaching position at SCU. Belinda Guthrie suggested plaintiff to file a complaint with

22   www.ratemyprofessors.com (Exhibit 6 not attached herewith) to have the defamatory comment

23   removed which would be tantamount to destroying the evidence of defendant Grace Ling's published

24   defamatory statement against plaintiff when SCU had neither perfected its investigation nor taken any

25   necessary action to correct defendant's vicious calumny as requested.

26        38. Considering plaintiff's previous protected activity in coming forward to report to Belinda

27   Guthrie the August 23, 2019, discriminatory incident against Jeremy Kemp who was closely connected

28   to Nam Ling's wife and had large influence on Chair Nam Ling, and their daughter Grace Ling

COMPLAINT AND DEMAND FOR JURY TRIAL
PN090321-10                                              13

indirectly, Belinda Guthrie's rush to determine that there had been no discrimination and retaliation was superficial. Plaintiff's complaint and request for an immediate thorough investigation and disciplinary action through his "Declaration of Peter P. Nghiem as a Rebuttal to Grace Ling's Vicious Calumny" were substantiated by preponderant evidence which would be corroborated by numerous witnesses listed in his declaration (Exhibit 3, ¶¶9-18). But no witnesses were interviewed in the course of Belinda Guthrie's investigation. As such, her shoddy investigation was not just flawed but inexplicably unfair. The quality of SCU Title IX office's investigation, or the lack of thereof, under the circumstance contribute to the inference of intentional discrimination and cover up.

39. On or about October 22, 2020 and November 20, 2020, SCU's Engineering News emailed from Heidi Williams, Director of Communication, announced Grace Ling as a student superstar while there had been no discipline or reprimand against Grace Ling by SCU management for her egregiously false and malicious published statements about plaintiff (Exhibits 7.A and 7.B not attached herewith). Apparently, SCU not only failed to protect plaintiff, a member of his protected classes and the victim of discrimination and retaliation, but also condoned and ratified the conspirators' defamatory insinuations and calumny against him to destroy his good name and career through their pretext for discrimination. Defendants' conduct was especially egregious since they took actions to cover up discrimination and failed to act in good faith to enforce SCU's published policies and practices to eliminate discrimination.

FIRST CAUSE OF ACTION -- VIOLATION OF TITLE VII

40. Plaintiff realleges and incorporates by reference herein the allegations of paragraphs 1 through 39, inclusive, as set forth above.

41. Defendants' discrimination against plaintiff regarding job assignment, hiring, advancement, disparate treatment, discharge, and other terms, conditions, and privileges of employment are in violation of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991.

42. Defendants have engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a) by publishing defamatory statements and calumny as pretext for

1  discrimination, cancelling plaintiff's job assignment, suspending, and terminating plaintiff's

2  employment because he opposed discriminatory practices and exercised his federally protected rights.

3      43. By the conduct described above, defendants intentionally violated the rights of plaintiff

4  under Title VII.

5      44. Defendants' conduct also has had an adverse impact against plaintiff, and is neither job-

6  related nor consistent with business necessity, and therefore violates the rights of plaintiff under Title

7  VII.

8      45. As a result of the violation of the Title VII rights of plaintiff, he is entitled to equitable and

9  injunctive relief, including rightful place and make whole remedies and equitable monetary relief, to

10  remedy and compensate for the effects of defendants' unlawful actions.

11      46. As a result of the defendants' intentional violation of the Title VII rights of plaintiff, he has

12  suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, thereby entitling

13  them to compensatory damages.

14      47. In their discriminatory actions as alleged above, defendants have acted with malice or

15  reckless indifference to the rights of plaintiff, thereby entitling him to an award of punitive damages.

16      48. To remedy the violation of the rights of plaintiff secured by Title VII, plaintiff requests that

17  the Court award him the relief prayed for below.

18            SECOND CAUSE OF ACTION -- VIOLATION OF 42 U.S.C. §1981

19      49. Plaintiff realleges and incorporates by reference herein the allegations of paragraphs 1

20  through 48, inclusive, as set forth above.

21      50. Defendants' discrimination and retaliation against plaintiff are in violation of the rights of

22  plaintiff afforded by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act

23  of 1991.

24      51. By the conduct described above, defendants intentionally deprived plaintiff the same rights

25  as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and

26  privileges, of their contractual employment relationship with SCU, in violation of 42 U.S.C. §1981.

27      52. As a result of defendants' discrimination and retaliation in violation of Section 1981,

28  plaintiff has been denied employment opportunities providing substantial compensation and benefits,

1    thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish,

2    humiliation, distress, inconvenience, and loss of enjoyment of life because of defendants' actions,

3    thereby entitling him to compensatory damages.

4        53. In its discriminatory actions as alleged above, defendants have acted with malice or

5    reckless indifference to the rights of plaintiff, thereby entitling him to an award of punitive damages.

6        54. To remedy the violations of the rights of plaintiff secured by Section 1981, plaintiff

7    requests that the Court award him the relief prayed for below.

8    
9    

THIRD CAUSE OF ACTION -- VIOLATION OF
THE AGE DISCRIMINATION IN EMPLOYMENT (ADEA)

10        55. Plaintiff realleges and incorporates by this reference the allegations set forth in paragraph 1

11    through 54, inclusive, as though fully set forth herein.

12        56. Defendants' discrimination against plaintiff because of his age above 40 is in violation of

13    the rights of plaintiff afforded by the Age Discrimination in Employment Act of 1967, as codified, 29

14    U.S.C. §§621 to 634.

15        57. Defendants utilized a biased recruitment system that discriminated against plaintiff because

16    of his age above 40 and telling him that he was too old for the tenure-track Assistant Professor position

17    despite his qualification and that he should apply to teach Computer Architecture elsewhere in local

18    community colleges constitutes illegal, intentional discrimination, and unjustified disparate treatment

19    prohibited by 29 U.S.C. §623(a)(1).

20        58. Defendants' conduct also has had an adverse impact against plaintiff, and is neither job-

21    related nor consistent with business necessity, and therefore violates the rights of plaintiff under

22    ADEA.

23        59. As a result of defendants' discrimination in violation ADEA, plaintiff has been denied

24    employment opportunities providing substantial compensation and benefits, thereby entitling him to

25    injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress,

26    inconvenience, and loss of enjoyment of life because of defendants' actions, thereby entitling him to

27    compensatory damages.

28    

COMPLAINT AND DEMAND FOR JURY TRIAL
PN090321-10                                                    16

60. In their discriminatory actions as alleged above, defendants have acted with malice or reckless indifference to the rights of plaintiff, thereby entitling him to an award of punitive damages.

61. To remedy the violation of the rights of plaintiff secured by ADEA, plaintiff requests that the Court award him the relief prayed for below.

### FOURTH CAUSE OF ACTION -- VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

62. Plaintiff realleges and incorporates by this reference the allegations set forth in paragraph 1 through 54, inclusive, as though fully set forth herein.

63. Defendants' discrimination against plaintiff, a stroke and cancer survivor, because of his disability is in violation of the rights of plaintiff afforded by the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§12112 to 12117 ("ADA")

64. Defendants' intentionally discriminated against plaintiff, a qualified individual, on the basis of disability in regard to job assignment, hiring, advancement, or discharge, and other terms, conditions, and privileges of employment violates the rights of plaintiff under ADA.

65. As a result of defendants' discrimination in violation ADA, plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of defendants' actions, thereby entitling him to compensatory damages.

66. In their discriminatory actions as alleged above, defendants have acted with malice or reckless indifference to the rights of plaintiff, thereby entitling him to an award of punitive damages.

67. To remedy the violation of the rights of plaintiff secured by ADA, plaintiff requests that the Court award him the relief prayed for below.

### FIFTH CAUSE OF ACTION -- VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (FEHA)

68. Plaintiff realleges and incorporates by reference herein the allegations of paragraphs 1 through 67, inclusive, as set forth above.

69. Defendants' discrimination and retaliation against plaintiff is in violation of the rights secured to plaintiff by FEHA, California Government Code §§12940 et seq.

70. By the conducts described above, defendants intentionally violated the rights of plaintiff under FEHA.

71. Defendants' conducts also have had an adverse impact on plaintiff and are neither job-related nor consistent with business necessity, and therefore violates the rights of plaintiff under FEHA.

72. As a result of the violation of the FEHA rights of plaintiff, he is entitled to equitable and injunctive relief, including monetary relief, compensatory and punitive damages to remedy and compensate for the effects of defendants' unlawful actions and injuries caused by those actions.

73. To remedy the violation of the rights of plaintiff as secured by FEHA, plaintiff requests that the Court award them the relief prayed for below.

## SIXTH CAUSE OF ACTION – DEFAMATION

74. Plaintiff realleges and incorporates by this reference the allegations set forth in paragraph 1 through 54, inclusive, as though fully set forth herein.

75. Plaintiff has always enjoyed a very good reputation in both his personal and professional life and is well respected in both his business community as well as his local community.

76. At all times mentioned herein, defendants, and each of them, were authorized and power by each other to act, and did so act, as agents of each other, and all the things herein alleged to have done by them were done in the capacity of such agency. Upon information and belief, all defendants are responsible in some manner for the events described herein and are liable to plaintiff for the damages they have incurred.

77. On or about December 18, 2019, Grace Ling, Chair Nam Ling's daughter, made the following defamatory statements about or concerning plaintiff on SCU student's evaluation form which would normally be reviewed by SCU management and faculty and partially accessible by students.

1   "Peter Nghiem has been the most unprofessional and condescending professor that I've ever
2   had in my 4+ years at SCU. Not only his lectures are disorganized, but he also singled me out for
3   harassment. Nghiem creates a learning environment is hostile and discouraging.

4   He has deeply negatively affected my interest in the subject. Peter Nghiem's lecture style is
5   disorganized, so it's hard to follow what he's talking about in class. The exams look nothing like lecture
6   material and homework.

7   Peter Nghiem also lied. The only reason why I didn't drop the class was that he promised
8   everyone that there would be a midterm retake. He told me that my grade will be okay but harassment
9   only got worse. The class after the last day to drop the class, he suddenly says there will be no midterm
10   retake, just the final. My academics are severely impacted because of Nghiem.

11   Since the beginning of the quarter, Peter Nghiem was asking me personal questions like
12   "Where do you live? How old is your sister? What does your mom do? Where is your dad traveling
13   to?" When I give him vague answers because I'm not comfortable, he continues to try to get an answer
14   out of me. He also tries to walk out with me every time after class and talk to me during breaks when I
15   never saw him talk to any other student. I started leaving class 5 minutes early and pretend to be
16   texting to avoid contact with him a month ago. His behavior is threatening because he was following
17   and stalking me.

18   I didn't do well on the midterm, so I went to Nghiem's office hours to get feedback on my
19   work. Instead of being constructive, he spends 1.5 hours telling me that I "didn't study" to make me
20   feel ashamed and incompetent. He cut me off when I tried to get back on the subject and (this made of
21   been my mistake of mentioning this, but I was also struggling a lot with mental health and questioning
22   my choice of grad school so I tried to subtly explain since he was hounding me for an answer of why I
23   didn't do well and he wouldn't stop asking the same thing. When I'm in shock, I tend to talk too much
24   to try to justify the case). He then shames me for that and goes on to say how he came from his country
25   and then studied really hard in the US to get a degree and keeps questioning why I can't do the same
26   because apparently it's "so simple."

27   A few days later after class, I was talking to my friend outside. Nghiem randomly comes up
28   and interrupts our conversation to say "Grace, are you ready for the final? You got one of the lowest

1   scores in the class on the midterm. You better start studying now" in front of everyone, violating my
2   privacy.

3           Also, Nghiem does not randomly call on students to answer questions, but he randomly called
4   on me. When I did not know the answer, he told me that I need to study more and that I am not ready
5   for the final in front of the whole class. When I said "ok," since I didn't know what would be the best
6   response as I was in shock, he kept repeating how I should study more. I proceeded to pull up my notes
7   to answer his question and he continued to make me seem incompetent and humiliated me in front of
8   the class and then cut me off when I answered to say how I should study more even though I was
9   reading right from my notes. I was singled out and harassed.

10          During the final presentation, Nghiem kept on interrupting my group and pointing out things
11   that are wrong.

12          I sincerely hope that my teaching evaluation gets read and action gets taken. I do not want other
13   students at SCU to have to go through anything like what I went through. He is a danger to students.
14   Thank you for reading" (Exhibit 3, ¶¶9-18).

15          78. On or about September 24, 2020, plaintiff accidently discovered that defendant Grace Ling
16   also made the following similar defamatory statement about plaintiff online at
17   www.ratemyprofessors.com/ShowRatings.jsp?tid=2545607 on December 2, 2019, which could be
18   viewed by all students and anyone who has access to internet in the whole world:

19          "Avoid Peter Nghiem. The lecture style is disorganized, so it's hard to follow what he's talking
20   about in class. The exams look nothing like lecture material and homework. Nghiem also publicly
21   shames you if he randomly calls you out to answer something and you don't answer correctly. He
22   creates a learning environment is hostile and discouraging."

23          79. The above said defamatory statements made by Grace Ling were and are explicitly false
24   and malicious as shown in the "Declaration of Peter P. Nghiem as a Rebuttal to Grace Ling's Vicious
25   Calumny" supported by preponderant evidence which could be corroborated by numerous witnesses
26   listed in the rebuttal (Exhibit 3, ¶¶9-18). Defendant knew about the falsity of her defamatory
27   statements and intentionally fabricated fictitious incidents and distorted facts to disguise them to
28   deceive readers. Defendant Grace Ling further verbally made the same defamatory statements to acting

Chair Silvia Figueira in person. Lead professor Weijia Shang was aware of them and discussed them with plaintiff. Upon information and belief, many other SCU faculty and staff also know about them.

80. Defendant made the above said defamatory statements with malice and with the intent to injure plaintiff's good name and reputation and to interfere with his job assignment, his employment, and his advancement at SCU, in that defendant harbored ill-will toward plaintiff. Since Defendant Grace Ling's damaging statements about plaintiff were maliciously motivated to cause injury to plaintiff, the privilege of the publication was lost, and defendant is liable for libel and slander.

81. The aforesaid defamatory statements have harmed plaintiff's reputation. Such statements tend to injure and have injured plaintiff in his occupation, his employment, his future business, and his career. His employment prospects have also been severely harmed.

82. The above said acts of defendants constituted defamation, which was a substantial factor in causing damage and injury to plaintiff. As a direct, foreseeable, proximate result of defendants' action, plaintiff has been injured, has suffered severe emotional distress, and has suffered and continues to suffer loss of income and benefits, loss of compensation, loss of career path opportunities, and expenses in an amount according to proof.

83. In acting as alleged hereinabove, defendants acted in a deliberate, cold, intentional, fraudulent, malicious, and oppressive manner, and conscious disregard of plaintiff's rights to cause him cruel and unjust hardship, and injury such that an award of punitive damages sufficient to punish defendants is warranted under California Civil Code §3294 (a) and (c).

84. To remedy the damage and injury to plaintiff caused by defendants' defamation, plaintiff requests that the Court award him the relief prayed for below.

SEVENTH CAUSE OF ACTION – CONSPIRACY
TO COMMIT CIVIL WRONG AND TORT

85. Plaintiff realleges and incorporates by this reference the allegations set forth in paragraph 1 through 84, inclusive, as though fully set forth herein.

86. Plaintiff alleged that Nam Ling, Jeremy Kemp, Grace Ling, and SCU acted in concert to discriminate and retaliate against plaintiff for exercising his federal protected rights to report the harassment and discriminatory incident which happened on August 23, 2019, in a multimedia video

workshop for SCU faculty and then created a pretext for discrimination and cover up using Grace Ling's defamatory insinuations and calumny to remove plaintiff from any faculty position at SCU. Defendants further attempted to justify several past unresolved injustices that plaintiff has had to endure by assassinating his character and reputation to mar his credibility.

87. In discriminating and retaliating against plaintiff, defendants were acting for their own personal purposes and not blindly executing SCU's policy. In doing so, they became independent actors who conspired with each other and with SCU to frame plaintiff with personal misconduct and professional incompetence to cover up their own discrimination as well as to destroy plaintiff's credibility in his past federal and state actions.

88. Plaintiff alleged a sequence of events sufficient to permit an inference of a meeting of the minds of the conspirators which started with the discriminatory incident on August 23, 2019, where Jeremy Kemp implied through his demeaning and disparate treatment as well as his denigrating comment and gesture that plaintiff was not qualified to teach Computer Architecture and should be ousted from his teaching job at SCU. After plaintiff exercised his federal protected rights to report the discriminatory incident, Jeremy Kemp revealed his close connection to Nam Ling's wife, Mei Yan Lu, who was his "good friend and mentor from SJSU in Educational leadership" to show his close connection and influence on the Chair of SCU COEN department (Exhibit 3.14). Subsequently, in Fall 2019, Nam Ling told plaintiff he was too old for the tenure-track Assistant Professor position at SCU, and he should apply to teach Computer Architecture elsewhere in local community colleges. Shortly, thereafter, defendant Grace Ling, Nam Ling's daughter, published her defamatory insinuations and calumny to assassinate plaintiff's personal character and professional competence to teach Computer Architecture as pretext for discrimination and retaliation. As a result, plaintiff's job assignments were all canceled last minute in Spring 2020 and Fall 2020, and no more job assignment for him in 2021 and the next year. His faculty listing as Adjunct Lecturer on SCU COEN website was then removed. Heidi Williams, Director of Communication, mentioned about plaintiff's new patent granted by USPTO on May 5, 2020, for his "BToP method" invented at SCU but listed in the Alumni news section instead of Faculty news section. Grace Ling was neither disciplined nor reprimanded for her egregious calumny against plaintiff. In Fall 2020, defendant Grace Ling was announced in SCU's Engineering News as a

student superstar while plaintiff had been ousted from his teaching job at SCU and his career was ruined. In condoning, ratifying, and participating in the conspiracy against plaintiff, and failing to prevent such conspiracy to deprive plaintiff of equal protection of the laws and privileges under the laws which resulted in his injury, SCU violated 42 U.S.C. §1985(2).

89. Plaintiff has established the elements of a deterrence claim under 42 U.S.C. §1985(2) which are (1) a conspiracy, (2) to deter testimony by force or intimidation, and (3) injury to the plaintiff. As such, plaintiff, who was injured because of the conspiracy, may have an action for damages against one or more of the conspirators under 42 U.S.C. § 1985(3).

90. The above said acts of defendants constituted conspiracy to commit civil wrong and tort, which was a substantial factor in causing damage and injury to plaintiff. As a direct, foreseeable, proximate result of defendants' action, plaintiff has lost income and benefits and will continue to lose wages and suffer other consequential damages and expenses in an amount according to proof.

91. As a further direct, foreseeable, proximate result of defendants' actions, plaintiff has suffered severe emotional distress in an amount according to proof.

92. In acting as alleged hereinabove, defendants acted in a deliberate, cold, intentional, fraudulent, malicious, and oppressive manner, and conscious disregard of plaintiff's rights to cause him cruel and unjust hardship, and injury such that an award of punitive damages sufficient to punish defendants is warranted under California Civil Code § 3294 (a) and (c).

93. To remedy the damage and injury to plaintiff caused by defendants' defamation, plaintiff requests that the Court award him the relief prayed for below.

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the Court grant relief as specified below.

94. Plaintiff prays that the Court issue a declaratory judgment against defendant SCU finding that they have violated the rights of plaintiff under Title VII, Section 1981, ADEA, ADA, and FEHA, by denying and depriving plaintiff of equal employment opportunities on the basis of race, national origin, age, or disability, as alleged in this complaint; and that the practices complained of herein are unlawful and violate 42 U.S.C. §§2000e, et seq.; 42 U.S.C. §1981a, et seq.; 29 U.S.C. §§621, et seq.; 42 U.S.C. §§12112, et seq.; and California Government Code §§12940, et seq..

95. Plaintiff prays that the Court issue a preliminary and permanent injunction pursuant to Title VII, Section 1981, ADEA, ADA, and FEHA, enjoining defendant SCU, its officers, agents, employees, and all others acting for or succeeding SCU, from engaging in the discriminatory employment practices alleged in this complaint that discriminate against employees in violation of Title VII, Section 1981, ADEA, ADA, and FEHA, on the basis of race, national origin, age, or disability, and retaliate against employees who exercise their federally protected rights to complaint about discrimination.

96. Plaintiff prays that the Court enter a preliminary and permanent injunction ordering and requiring that defendant SCU formulate, institute, adopt and maintain policies and practices which will provide equal employment opportunities to plaintiff and which will to the extent practicable remedy the continuing effects of past discrimination against plaintiff, and restore him to the employment status and position he would have held and enjoyed but for the unlawful discrimination complained of herein.

97. Plaintiff prays that the Court enter a preliminary and permanent injunction against defendants and SCU and its officers, agents, successors, employees, representatives, and all persons acting in concert with them, from engaging in any conspiracy to interfere with plaintiff's civil rights in violation of 42 U.S.C. §1985(2-3).

98. Plaintiff prays that the Court order defendants to make whole plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices, defamation, and conspiracy to commit civil wrong and tort described above, including but not limited to job search expenses and medical expenses.

99. Plaintiff prays that the Court order defendants to make whole plaintiff by providing compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation.

100. Plaintiff prays that the Court order defendants to pay plaintiff punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial. Particularly for the Sixth and Seventh Causes of action, an award of punitive damages sufficient to punish

defendants and deter such extremely egregious conducts is warranted under California Civil Code §3294 (a) and (c)

101. Plaintiff prays that the Court award him his costs, expenses, and attorneys' fees, payable by defendants.

102. Plaintiff prays that the Court order defendants to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

103. Plaintiff prays that the Court enter an order appointing a monitor to ensure that defendants comply with the injunction provisions of any decree that the Court orders.

104. Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period of time to assure that defendants have fully complied with the preliminary and permanent injunctions requested herein and have remedied to the greatest extent practicable the discriminatory policies and practices, defamation, and conspiracy to interfere with civil rights complained of herein, and that SCU is operating in full compliance with the requirements of Title VII, Section 1981, ADEA, ADA, and FEHA with regard to its employment policies and practices.

105. Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

DEMAND FOR JURY TRIAL

106. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 29 U.S.C. §626(c)(2), plaintiff demands a trial by jury in this action.

Date: September 3, 2021

Respectfully submitted,

PETER P. NGHIEM
Pro Se Plaintiff

**LIST OF EXHIBITS**

**Exhibit**                                                                    **Page(s)**

1.A  Charge of Discrimination filed with EEOC and CDFEH, initiated on 5/19/2021...............2, 13

1.B  EEOC Notice of Suit Rights, dated 6/8/2021........................................................................3

2    Belinda Guthrie's email to Peter Nghiem Re: IR #00003284 Discrimination – Learning
     Commons (Jeremy Kemp's 8/23/2019 discriminatory incident), dated 9/2/2020....................5, 9

3    Declaration of Peter P. Nghiem as a Rebuttal to Grace Ling's
     Vicious Calumny, dated 1/7/2020..........................................................4-7, 9-12, 14, 20, 22

3.14 Jeremy Kemp's email Re: Time for coffee? revealing his close connection
     to Chair Nam Ling's wife, dated 9/6/2020...............................................................................9

3.16 Peter Nghiem's emails with lead professors Weijia Shang and Silvia Figueira
     Re: Grace Ling's Vicious Calumny, dated 12/18 to 12/21/2020 ..........................................11

(The following Exhibits are not attached herewith)

4.A  Lisa Jocewicz's email notifying the cancellation of Peter Nghiem's COEN 210
     and COEN 389 course sessions in Spring 2020, dated 9/20/2020.....................................12

4.B  Pam Lin's email notifying the cancellation of Peter Nghiem's COEN 210 course
     session in Fall 2020, dated 8/3/2020...................................................................................12

5.A  Heidi Williams announced Peter Nghiem's new patent granted by USPTO for his
     BToP method in the Alumni News section instead of the Faculty News section of
     SCU Engineering The Buzz for Thursday 5-7-20 email, dated 5/7/2020..............................12

5.B  Heidi Williams announced Peter Nghiem's new patent granted by USPTO for
     his BToP method in the Alumni News section instead of the Faculty News
     section of SCU Engineering News email, dated 6/6/2020....................................................12

6    Belinda Guthrie's reply email to Peter Nghiem Re: Clear and Convincing
     Evidence of Defamation and Retaliation, dated 9/25/2020..................................................13

7.A  Heidi Williams announced Grace Ling as a student superstar in SCU
     Engineering's Five10 Report email, dated 10/22/2020.......................................................14

5.B  Heidi Williams announced Grace Ling as a student superstar in SCU
     Engineering News Fall 2020 email, dated 11/20/2020........................................................14